**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-02259-CMA-CBS

DEBORAH K. FRANK,

    Plaintiff,

v.

AMFIRST BANK, NATIONAL ASSOCIATION, a Nebraska corporation,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this employment discrimination case, Plaintiff Deborah K. Frank alleges that she was sexually harassed by her supervisor at Defendant AmFirst Bank ("AmFirst") and retaliated against for reporting the harassment. Because Plaintiff's sexual harassment claim is time barred and her retaliation claim fails as a matter of law, this Court grants summary judgment in Defendant's favor.

## I. BACKGROUND

In April 2008, Ms. Frank was offered and accepted a position with AmFirst's Longmont branch. Her offer letter included the job duties and responsibilities that she was expected to perform, including that of a Loan Administration Assistant. (Doc. # 24-3.) Although she performed some loan administration duties throughout her employment, because of the size and needs of the Longmont branch, Ms. Frank also performed teller duties. (Doc. ## 24, ¶¶ 13, 14; 24-2 at 73-74; 25, ¶¶ 13, 14.) Ms.

Frank's immediate supervisor was Ms. Wong, who reported to Mr. Callis, AmFirst's Senior Vice President. (Doc. # 24, ¶ 11; Doc. # 25, ¶ 11.)

Beginning in October 2008, Mr. Callis began making comments to Ms. Frank that she considered sexual harassment. (Doc. # 24-2 at 27.) According to Ms. Frank, Mr. Callis would comment on her appearance and attire. (Doc. # 24, ¶¶ 27, 47, 55; Doc. # 25, ¶¶ 27, 47, 55.) During lunch breaks, Mr. Callis would read newspaper articles of a sexual nature out loud and then ask Ms. Frank questions. (Doc. # 24-2 at 92.) The two had conversations about prostate problems and erectile dysfunction. (Doc. # 24, ¶ 39, 41; Doc. # 25, ¶ 39, 41.) In December 2009, Mr. Callis told Ms. Frank that if he had an affair with her, he would not tell anyone because he can keep secrets. (Doc. # 24, ¶ 45; Doc. # 25, ¶ 45.) In April or May 2010, Mr. Callis asked Ms. Frank if she knew what the acronym MILF meant. When Callis told her that it meant "Mothers I would like to f**k", Ms. Frank told him that was "disgusting" and walked away. (Doc. # 24, ¶ 52; Doc. # 25, ¶ 52.) In June 2010, Mr. Callis asked Ms. Frank about her bra size. (Doc. # 24, ¶ 54; Doc. # 25, ¶ 54.) This was the last sexual comment Ms. Frank recalled and at that point, she began avoiding Mr. Callis. (Doc. # 24-2 at 67-68.)

Ms. Frank claims that, at various times, she would verbally report some of Mr. Callis's comments to Ms. Wong. (Doc. # 24, ¶¶ 28, 61; Doc. # 25, ¶¶ 51.) On October 18, 2010, AmFirst received a letter from Ms. Frank in which she formally complained that Mr. Callis had sexually harassed her. (Doc. # 24, ¶ 26; Doc. # 25, ¶ 26.) In response, AmFirst immediately informed Ms. Frank that she would no longer report to anyone at the Longmont branch office; rather, her new supervisor would be Ms.

Costello, AmFirst's Vice President of Loan Administration.  (Doc. # 24, ¶ 76; Doc. # 25, ¶ 76.)  Ms. Costello was not informed of the reasons behind the change in the reporting structure, nor did she become aware of the nature of Ms. Frank's allegations against Mr. Callis until Ms. Franks filed a complaint with the EEOC on May 24, 2011.[1]  (Doc. # 24, ¶¶ 78, 80, 81.)

AmFirst also immediately hired Mountain States Employment Council ("MSEC") to conduct an investigation into Ms. Frank's allegations, which MSEC completed in November of 2010.  (Doc. # 24, ¶¶ 73, 82; Doc. # 25, ¶¶ 73, 82.)  In her report, the investigator concluded that it was more likely than not that Mr. Callis made comments of a sexual nature to Ms. Frank.  (Doc. # 25-1.)  Following receipt of the investigator's report, AmFirst verbally reprimanded Mr. Callis.  (Doc. # 24-4 at 4.)  In addition, Ms. Drey, AmFirst's Vice President of Human Resources, met with Ms. Frank to discuss the findings, informed her that AmFirst would not tolerate retaliation, and encouraged her to come forward if she experienced retaliation or further harassment.  (Doc. # 24, ¶ 83; Doc. # 25, ¶ 83.)

---

[1] Although Ms. Frank alleges that Ms. Costello did know the nature of the allegations against Mr. Callis prior to Ms. Frank's filing of the EEOC charge, she fails to point to competent evidence that creates a genuine dispute of this fact.  Instead, Ms. Frank cites to an exhibit that appears to be a memorandum authored by Ms. Costello in which she notes, "[Ms. Frank and I] had a discussion about moving forward after the situation she had with Bob Callis. . . ."  (Doc # 25-2 at 9.)  However, this vague statement is not sufficient to refute Costello's explicit testimony that she did not know that Ms. Frank claimed Mr. Callis sexually harassed her.  (Doc. # 24-4 at 143.) Although this Court must draw reasonable inferences in Ms. Frank's favor, the inference that Ms. Costello knew the specific nature of Ms. Frank's complaints is not reasonable, particularly when Ms. Frank admits that she had other non-discriminatory problems with Callis.  See (Doc. ## 24, ¶¶ 21, 22; 25, ¶¶ 21, 22) (Ms. Frank took considerable offense to Mr. Callis's suggestion that she left work early and complained to Ms. Drey).  Ms. Frank failed to provide the page of Costello's Rule 30(b)(6) deposition that Ms. Frank contends refutes this fact.  Accordingly, the Court deems this fact undisputed.

On September 1, 2010, before Ms. Frank made her formal complaint of harassment, AmFirst hired Carolyn Schleiger as a full-time teller at the Longmont branch to relieve Ms. Frank of most of her teller duties so she could focus on loan administration. (Doc. # 24-2 at 73-74.) When Ms. Costello began supervising Ms. Frank, Ms. Costello observed that Ms. Frank made a lot of mistakes in her work (Doc. # 24-11), to which Ms. Frank complained that she had not been trained properly. (Doc. # 24, ¶ 88; Doc. # 25, ¶ 88.)

On March 17, 2011, Ms. Costello gave Ms. Frank a performance review that indicated she was not meeting expectations. (Doc. # 24, ¶¶ 92, 94; Doc. # 25, ¶¶ 92, 94.) After receiving the review, Ms. Frank went home sick. (Doc. # 24-2 at 85.) On March 21, 2011, Ms. Frank brought her review into the Longmont branch with a note stating, "This performance review is an attack on my intelligence and work ethic. I can no longer work in this hostile and antagonistic environment. You win." (Doc. # 24, ¶ 96; Doc. # 25, ¶ 96.) She gave her keys to the bank to Ms. Schleiger and left. (Doc. # 24, ¶ 97; Doc. # 25, ¶ 97.)

On August 22, 2013, Ms. Frank filed the instant action, alleging claims for hostile work environment and retaliation. (Doc. # 1.) The parties have filed cross motions for summary judgment, which are ripe for this Court's review. (Doc. ## 18, 24.)

## II. STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper

4

disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits,

5

deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III.    ANALYSIS

**A.    HOSTILE WORK ENVIRONMENT CLAIM**

The Court first considers AmFirst's argument that Ms. Frank's hostile work environment claim is untimely. An employee wishing to challenge an employment practice under Title VII must first file a charge of discrimination with the EEOC. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1163 (10th Cir. 2007) (citing 42 U.S.C. § 2000e-5(e)(1)). Although the applicable deadline for filing a charge with the EEOC depends on a variety of circumstances, "the latest possible filing date is 300 days from the last allegedly unlawful act." *Id.* If the employee does not submit a timely EEOC charge, he or she may not proceed to court. *Id.*; *see also Semsroth v. City of Witchita*, 304 F. App'x 707, 717 (10th Cir. 2008) (unpublished) (affirming the district court's exclusion of conduct that occurred outside the 300-day window).

"As applied to hostile work environment claims, however, the 300-day requirement has proven problematic because a hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Tademy v. Union Pacific Corp.*, 614 F.3d 1132, 1138-39 (10th Cir. 2008) (internal citations, quotation marks, and alterations omitted) (citing *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 117 (2002) and *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005)). Therefore, "[i]n order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment."

*Morgan,* 536 U.S. at 118.  Said another way, "A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  *Id.* at 122.

Ms. Frank filed her charge of discrimination with the EEOC on May 24, 2011; 300 days prior to that date is July 28, 2010.  It is undisputed that the last sexual comment Ms. Frank complained of occurred in June 2010 (Doc. # 24-2 at 67-68), more than 300 days prior to the date she filed her EEOC charge.

Ms. Frank responds by pointing to various acts that took place after her October 2010 complaint.  These acts include allegations that Mr. Callis continued to be Ms. Frank's supervisor and review her performance evaluations throughout her employment, Ms. Wong and Ms. Costello continued to report to Mr. Callis, Ms. Wong began watching Ms. Frank and keeping notes about her, and Ms. Wong complained about Ms. Frank to Ms. Drey at Mr. Callis's suggestion.  (Doc. # 25 at 13-14).

Courts look at whether acts are related in type, frequency, and perpetrator to determine if they are part of the same hostile work environment.  *See Duncan*, 397 F.3d at 1309.  However, the acts that Ms. Frank points to are not so related.  *See id.* (earlier acts of threatening physical and psychological harassment are not a part of the same claim for later acts of making off-color comments and spreading rumors).  The initial acts that Ms. Frank complains of were sexual comments made by Mr. Callis, whereas the later acts are better characterized as relating to her retaliation claim because they involve alleged adverse employment actions.  *See Tademy*, 614 F.3d at 1139 (noting, in

7

the context of a hostile work environment claim based on race discrimination, that the "harassment must be racial or stem from racial animus") (citing *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998)).

"A hostile work environment occurs when unwelcome sexual conduct unreasonably interferes with an employee's performance or creates an intimidating, hostile or offensive work environment." *Smith v. Northwest Financial Acceptance, Inc.*, 129 F.3d 1408, 1412 (10th Cir. 1999) (internal quotation marks and alterations omitted). However, "[a] claim of retaliation is a distinct allegation of an unlawful employment practice." *Id.* at 1314; *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) ("each discrete incident of [discriminatory or retaliatory acts] constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted") (quoting *Morgan*, 536 U.S. at 110-13). Because Frank's retaliation claim is distinct from her allegations of sexual harassment, she cannot bootstrap one to the other in an effort to make her hostile work environment claim timely. Ms. Frank fails to point to any acts related to her hostile work environment claim made within 300 days from the date she filed her EEOC charge. Therefore, this claim is time barred.

**B.    RETALIATION CLAIM**

Next, AmFirst contends that that the undisputed material facts show that Ms. Frank's retaliation claim fails as a matter of law. To succeed on a claim of retaliation a plaintiff must show: (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action. *Duncan*, 397 F.3d at 1314. AmFirst concedes that Ms.

Frank meets the first criterion because her October 2010 complaint of sexual harassment was a protected activity. However, AmFirst contends that she cannot meet the other two requirements.

First, a business's decision to change its reporting structure so that an employee is no longer supervised by her alleged harasser is not an adverse employment action. *See Pinkerton v. Colo. Dept. of Transp.,* 563 F.3d 1052, 1062 (10th Cir. 2009) (noting, in the context of the *Ellerth/Fargher* defense, that removing the manager accused of harassment from supervising the complainant demonstrated that the business promptly resolved the harassment). Therefore, AmFirst's decision to change its reporting structure so that Ms. Frank did not continue to be supervised by her alleged harasser, but rather was supervised by Ms. Costello, is not an adverse employment action.

Second, Ms. Frank contends that her change in job duties from operations/teller work to loan administration duties was an adverse employment action.[2] "[R]eassignment of job duties is not automatically actionable." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006). "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (internal quotation marks omitted). "An adverse

---

[2] In her response, Ms. Frank asserts, "the protected Title VII conduct, namely, her reporting sexual harassment, was followed almost immediately by a change in supervisors and a change in job duties." (Doc. # 25 at 19). However, the temporal proximity between an employee's protected conduct and an adverse employment action "is not sufficient by itself to raise an issue of fact" regarding pretext. *Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1270 (10th Cir. 2004).

employment action is a **significant** change in employment status, such as hiring, firing, failing to promote, reassignment with **significantly** different responsibilities, or a decision causing a significant change in benefits." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 635 (10th Cir. 2012) (internal quotation marks omitted, emphasis in original). It is undisputed that Ms. Frank was originally hired to perform loan administration duties and that she performed some of those duties throughout her employment at AmFirst. Moreover, it is undisputed that, before Ms. Frank filed her formal complaint on September 1, 2010, Ms. Schleiger was hired as a full-time teller at the Longmont branch to relieve Ms. Frank of most of her teller duties so she could focus on loan administration. Under these circumstances, the Court finds that Ms. Frank did not suffer an adverse employment action when she was asked to perform the duties she was hired to do.

Third, Ms. Frank argues that Ms. Costello denied her adequate training and gave her a poor evaluation. However, even assuming that these are adverse employment actions, these actions lack the necessary causal relationship with Ms. Frank's protected activity. The causal-connection element of a *prima facie* retaliation claim requires the employee to show that the employer's motive for taking adverse action was its desire to retaliate for the protected activity. *Wells v. Colorado Dep't of Transp.,* 325 F.3d 1205, 1218 (10th Cir. 2003). As a prerequisite to this requirement, a "plaintiff must show that the individual who took adverse action against her knew of the employee's protected activity," or that Mr. Callis, the person allegedly harboring discriminatory animus, knew and used Ms. Costello, the person who effected the adverse action, "as a cat's paw to

10

effect . . . [his] own biased designs." *Montes*, 497 F.3d at 1176.  Ms. Costello was not informed of the reason behind the change in the reporting structure and did not know the nature of Ms. Frank's allegations against Mr. Callis until Ms. Frank filed a complaint with the EEOC months after she left AmFirst.  Although Ms. Frank makes conclusory statements that Ms. Costello reported to Mr. Callis and he had input into Ms. Frank's performance evaluations, Ms. Frank advances no argument that Mr. Callis used Ms. Costello to effectuate his own bias.  Therefore, Ms. Costello's actions lack a causal relationship to Ms. Frank's protected activity, and her retaliation claim fails as a matter of law.

### C. CONSTRUCTIVE DISCHARGE

Finally, AmFirst contends that Ms. Frank's claim that she was constructively discharged fails as a matter of law.  "Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Sandoval v. City of Boulder,* 388 F.3d 1312, 1325 (10th Cir. 2004) (quotation omitted).  In evaluating whether the employee's working conditions would cause such a feeling in a reasonable person, this Court applies "an objective test under which neither the employee's subjective views of the situation, nor her employer's subjective intent . . . are relevant." *Tran v. Trs. of State Colls. in Colo.,* 355 F.3d 1263, 1270 (10th Cir. 2004).

In her complaint, Ms. Frank contends that she was constructively discharged because she complained about sexual harassment. (Doc. # 1 at 7.)  In the Final Pretrial

Order, she contends she was constructively discharged "[d]ue to continuing retaliation . . . ." Accordingly, her constructive discharge claim relates to her retaliation claim.

The plaintiff's burden in a constructive discharge case is substantial and showing that the employer's conduct meets the definition of "tangible employment action" or "adverse employment action" is "not necessarily sufficient to establish a constructive discharge because a constructive discharge requires a showing that the working conditions imposed by the employer are not only tangible or adverse, but intolerable." *Id.* at 1270-71. Importantly, in constructive discharge cases "[t]he question is not whether the employee's resignation resulted from the employer's actions, but whether the employee had any other reasonable choice but to resign in light of those actions." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 805-06 (10th Cir. 2007). Because this Court has already determined that the actions about which Ms. Frank complains, *e.g.*, changing her supervisor and her job duties from operations/teller work to loan administration, were not adverse employment actions, Ms. Frank cannot demonstrate that they were intolerable. *See id.*

In an attempt to overcome this deficiency, Ms. Frank points to deposition testimony in which Ms. Drey testified as follows:

> Q:   Okay. And in reviewing Mountain States' report, do you not think that the behavior that Mountain States determined had occurred was reason enough for Ms. Frank to leave?
>
> A.   Possibly yes.
>
> . . . .
>
> Q:   Possibly she had reason to leave?

A:     Yes.

However, Ms. Drey's opinion regarding whether Ms. Frank had reason to leave AmFirst does not create a genuine dispute of material fact sufficient to maintain her allegation she was constructively discharged.  First, the question improperly called for a legal conclusion.  Second, the questions posed to Ms. Drey fall drastically short of the required high standard—Ms. Frank had to have more than "reason to leave"; her working conditions had to be intolerable.  Accordingly, Ms. Frank's claim that she was constructively discharged also fails.

## IV. **CONCLUSION**

Plaintiff has not shown that there exists a genuine dispute of material fact for trial on any of her claims and, based on the undisputed facts, Defendant is entitled to judgment as a matter of law.

Accordingly, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. # 24) is GRANTED.  It is

FURTHER ORDERED that Plaintiff's Motions for Summary Judgment (Doc. # 17, 18) are DENIED.  It is

FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE.  The Final Trial Preparation Conference set for March 2, 2015, and the five-day Jury Trial set to commence on March 9, 2015, are VACATED.

It is FURTHER ORDERED that Defendant shall have its costs by the filing of a Bill of Costs with the Clerk of the Court within ten days of the entry of judgment.  Each party shall bear its own attorney fees.

DATED:  January 22, 2015

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge